# EXHIBIT A

LEHOTSKY KELLER COHN LLP

Steven P. Lehotsky
200 Massachusetts Ave., NW
Suite 700
Washington, DC 20001

April 21, 2025

Alex Haas
Director, Federal Programs Branch
Civil Division
United States Department of Justice
950 Pennsylvania Ave., N.W.
Washington, D.C. 20530-0001

(*via email*)

Re:   *President and Fellows of Harvard College v. United States Department of Health and Human Services, et al.*

Dear Mr. Haas:

I represent Harvard University in the above-titled case. As you are aware, Harvard has filed suit against the government to challenge the unlawful "freeze" of over $2.2 billion in federal funding to the University.

With the filing of the Complaint, the government is required to preserve all evidence relevant to this matter, including the documents that would be produced in any administrative record. To avoid potential spoliation concerns, and to limit disputes over the scope of the record, I write to outline Harvard's understanding of what documents the administrative record should contain. We expect the government to begin preparing the record expeditiously.

The record, as you know, should include any and all documents or other information that the government directly or indirectly considered in arriving at its decision to freeze over $2.2 billion in grants to and contracts with Harvard University. In the period leading to the announcement of its decision, the government provided two bases for its action: (1) to enforce the antidiscrimination provisions of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*, and (2) to correct "ideological capture" at Harvard.

The first basis for decision, Harvard's purported violation of Title VI, requires the government to compile the documents it relied upon to reach its decision to allege a statutory violation and halt funding on that ground. This naturally would include materials considered to

conclude there was a Title VI violation, and materials considered in concluding that the government action taken—a funding "freeze"—was the appropriate, legally-justified action in response. Harvard expects to see all such documents in the certified administrative record.

The government's second basis for its action, Harvard's supposed "ideological capture," likewise requires the government to compile for the record the materials considered in concluding there was such "capture," and materials considered in determining, again, that a "freeze" was the appropriate and lawful response.

It should be noted that while the government has cited alleged Title VI violations and "ideological capture" as its grounds for action, there is an additional, closely-related ground: Harvard's rejection of the government's offer to continue the funding if Harvard agreed to certain conditions. Naturally the materials considered in presenting the demands and conditions the government did, and in proceeding with the freeze when Harvard declined the conditions, are part of the record.

Finally, and as noted, since the government's announcement of its "freeze," it has begun issuing grant and contract-specific notices to Harvard. All materials considered in arriving at those notices are also part of the record.

Harvard expects the documents in the administrative record to include not only any letters and communications between the Administration and Harvard, but also all formal and informal communications between and among any federal agency employees involved in the decision to freeze grants to and contracts with Harvard.

In addition, it is Harvard's understanding, based upon communications with government officials, that Messrs. Sean R. Keveney, Thomas E. Wheeler, and Josh Gruenbaum, and other members of the government's Task Force, received direction from White House officials concerning the decision to freeze Harvard's grants and contracts. The President himself on April 1 suggested the elimination of billions of dollars promised to Harvard. Complaint, ¶ 67. The certified administrative record should reflect all materials directly or indirectly considered by agency decisionmakers in freezing funding, even if those materials include directions by White House officials. *See, e.g.*, *California v. DHS*, 612 F. Supp. 3d 875, 893 (N.D. Cal. 2020) (ordering the government to produce White House documents that would meet the standard for an administrative record).

The summary provided above is non-exhaustive. The required contents of an administrative record are familiar to your Department; those requirements should be satisfied.

For its part, Harvard is prepared to move the Court to order the completion or further supplementation of the record as necessary, including through depositions by oral examination if appropriate. *See Dep't of Com. v. New York*, 588 U.S. 752, 782-83 (2019); *see also Olsen v. United*

*States*, 414 F.3d 144, 155-56 (1st Cir. 2005). We expect the government to be prepared to explain the manner in which it searched for and compiled the administrative record in order to determine whether that search was adequate and the record is complete. If the government seeks to withhold any documents from the record on the basis of privilege, we expect it to produce a complete privilege log identifying those documents and the specific reasons for their exclusion. *See Sierra Club v. U.S. Army Corps of Eng'rs*, 2023 WL 4350730, at *3 (D. Me. July 5, 2023) (requiring a privilege log in the context of a certified administrative record).

My client fully intends to seek the expeditious resolution of this dispute. The government has moved swiftly in its actions toward Harvard. We therefore expect it to move with comparable dispatch in litigating this matter, including submitting the administrative record in this case. *See Roe v. Mayorkas*, 2023 WL 3466327, at *18 (D. Mass. May 12, 2023) (ordering the expedited production of the administrative record).

I hope that this letter is helpful as you begin preparation of the administrative record. Please let me know, of course, if it would be helpful to discuss this matter or any other aspect of the litigation.

Sincerely,

Steven P. Lehotsky

3