# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Case No. 1:25-cv-11048-ADB

President and Fellows of
Harvard College,

    Plaintiff,

v.

United States Department of Health
and Human Services; et al.,

    Defendants.

_____/

## [PROPOSED] AMICUS CURIAE BRIEF

This case is not a routine dispute over administrative procedure. It is the product of a jurisdictional fabrication, an orchestrated litigation strategy designed to manufacture expedited declaratory relief where no lawful entitlement exists. Harvard's filings reflect not technical oversight, but structural dishonesty: a coordinated scheme to misclassify the nature of this action, manipulate jurisdictional thresholds, and leverage procedural distortions to override binding constitutional precedent. This proposed amicus brief is submitted to assist the Court in evaluating the broader legal and institutional consequences of allowing such tactics to proceed unchecked.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Case No. 1:25-cv-11048-ADB

President and Fellows of
Harvard College,

    Plaintiff,

v.

United States Department of Health
and Human Services; et al.,

    Defendants.

_____/

## MOTION FOR LEAVE TO FILE AMICUS CURIAE BRIEF

**Robert A. Pietz**, appearing *pro se*, respectfully moves for leave to file the attached materials in the above-captioned matter, and states as follows:

1. This case is not a routine dispute over administrative procedure. It presents grave structural concerns involving **jurisdictional fabrication, procedural misrepresentation, and tri-branch manipulation**, directly implicating the integrity of constitutional adjudication and the faithful application of the *Court's Local Rules*.

# JURISDICTIONAL FRAUD THROUGH MISCLASSIFICATION, DECLARATORY GAMING, AND TRI-BRANCH MANIPULATION

## A. Harvard's Jurisdictional Scheme Begins with Procedural Fraud

1. Case No. 1:25-cv-11048-ADB should be dismissed, consolidated, or stayed because it is **not** a legitimate lawsuit.

2. It is *a jurisdictional fabrication*. A deliberate procedural *scheme* designed to manufacture expedited declaratory relief where no lawful entitlement exists.

3. Harvard's strategy begins with a fundamental procedural misrepresentation: its *improper* use of **Nature of Suit Code "899"** on the civil form sheet [**ECF No. 1-11**] to falsely certify its APA challenge as a **Category II** case under Local Rule 40.1, a category *reserved for civil enforcement actions, not for administrative review*.

4. Under the plain text of the Court's Local Rules (effective October 1, 2023), Nature of Suit Code **899** is *properly assigned* to *Category III*, which governs standard administrative agency review cases. *See Local Rule 40.1(a)(1), p. 56.*

5. *Category III* cases, including APA actions, are *randomly assigned*, proceed under a standard civil timeline, and are not entitled to expedited docketing or preferential judicial handling, a structure designed to preserve the neutrality of administrative review and safeguard the separation of powers.

6. By knowingly misclassifying this APA challenge as a **Category II** case, Harvard:

    • Manipulated judicial assignment to secure Judge Allison D. Burroughs, who was already presiding over its related AAUP lawsuit (No. 1:25-cv-10910-ADB),

    • Illegitimately triggered accelerated scheduling procedures unavailable to normal APA claims,

2

- And falsely reframed a routine administrative dispute as an emergency constitutional controversy demanding immediate adjudication.

7. Harvard cannot shift responsibility for this misclassification onto clerical error or reliance on the Court's civil form sheet.

8. As a litigant admitted to practice before the District of Massachusetts, Harvard's counsel had a non-delegable duty to understand and correctly apply the Local Rules.

9. Local Rule 40.1(a)(1) *plainly* classifies APA challenges under *Category III*.

10. Any failure to comply with that assignment standard is the *fault of the filer*, not the Clerk's Office, not the civil form sheet, and not the Court's administrative materials.

11. Harvard's **misclassification** is therefore a *deliberate procedural abuse*, not a harmless or excusable oversight.

12. This procedural distortion corrupts the jurisdictional threshold. Jurisdiction demands not only standing, but the good-faith invocation of judicial process.

13. Here, Harvard weaponized procedural misrepresentation to stage a political and financial end-run around ordinary administrative review, manipulating both judicial assignment and case management to create an appearance of urgency where none lawfully exists.

### B. Misclassification as a Springboard for Declaratory Gaming

14. Harvard's misclassification was not a clerical error. It was the keystone of a broader jurisdictional strategy: **improperly invoking 28 U.S.C. §§ 2201–2202** (the Declaratory Judgment Act) as the engine driving Case No. 1:25-cv-11048-ADB.

15. Unlike the AAUP suit (No. 1:25-cv-10910-ADB), which lacked a clean declaratory framework, Harvard's 1:25-cv-11048-ADB Complaint was *surgically constructed* to:

3

- Demand expedited declaratory relief (Prayer "a"),

- Secure a judicial declaration that the Department of Education's so-called "Freeze Order" is unlawful (Prayer "b"),

- And obtain injunctive remedies mechanically flowing from that declaration (Prayers "c"-"g").

16. By *misclassifying* its APA challenge as a **Category II** case while *simultaneously invoking* §§ **2201–2202**, Harvard *evaded* the deliberate and rigorous structure APA litigation demands, gaining illicit procedural advantages.

17. Harvard's plan is simple: If it secures a favorable declaratory judgment in 1:25-cv-11048-ADB, it will immediately attempt to tether that result to 1:25-cv-10910-ADB by:

- Asserting issue preclusion and collateral estoppel;

- **Maintaining Category II expedited treatment across both dockets;**

- And politically repositioning itself as a judicially validated victim of government overreach, despite having evaded meaningful constitutional scrutiny.

18. In effect, Harvard seeks to *launder* its constitutional defeat through artificially manufactured declaratory relief, gaining procedural leverage it could never achieve through substantive adjudication alone.

## HARVARD'S LITIGATION STRATEGY MANIPULATES ALL THREE BRANCHES OF GOVERNMENT AND BETRAYS DEMOCRATIC FEEDBACK

### Executive

1. Harvard's assault on the executive branch is equally clear.

2. Having lost on the merits in *Students for Fair Admissions* - a case brought by Harvard's own democratically admitted body of students through the judicial process - Harvard

4

now seeks to weaponize taxpayer funds to defend an incomprehensibly vague and incomplete list of agencies, in a last-ditch effort to reverse the people's democratic outcome not once, but twice.

3. Rather than accept the judiciary's lawful and democratically grounded confirmation that its admissions practices violated constitutional mandates, Harvard attempts to reframe its funding loss as an "unconstitutional punishment," coercing the executive branch not merely through legal argument, but by siphoning public funds and commandeering government time and resources to defend Harvard's private institutional interests.

4. **This is not a defense of rights.**

5. It is an attempt to force the American people, through their government, to subsidize continued constitutional noncompliance by a private institution that the vast majority of Americans will never have the opportunity to attend.

6. This tactic distorts the Spending Clause framework beyond recognition.

7. It compels taxpayers to finance a private rebellion against a lawful constitutional judgment.

8. It forces the executive branch to defend a myriad of unnamed and improperly identified agencies, stitched together through confusion and deliberate omission, at the direct expense of the public whose interests the executive branch is sworn to protect.

### Legislative Manipulation

9. Harvard's conduct also constitutes a direct attack on Congress's constitutional authority.

10. By twisting 28 U.S.C. §§ 2201–2202 (the Declaratory Judgment Act) Harvard seeks to achieve jurisdictional outcomes Congress never authorized: namely, fast-track declaratory

judgments detached from final agency action, without satisfying the ordinary prerequisites of APA review or Article III case-or-controversy requirements.

11. For more than half a century, federal courts have consistently interpreted the Declaratory Judgment Act narrowly:

- The Act does not independently confer jurisdiction;[1]
- Declaratory relief is only appropriate where there exists a real, live controversy satisfying traditional standing, causation, and redressability;[2]
- Courts are required to exercise discretion even where jurisdiction exists, weighing prudential concerns such as finality, ripeness, and avoidance of piecemeal adjudication;[3]

12. Rather than seeking legitimate clarification or challenging the statute's limits through proper appellate channels, Harvard invokes 2201 and 2202 **out of context**, attempting to use legislative authorization as a procedural weapon after already initiating parallel litigation that has cost taxpayers millions of dollars in government defense expenditures.

13. Instead of respecting the boundaries Congress and the judiciary have imposed on declaratory relief, Harvard uses the Declaratory Judgment Act:

- To manufacture a procedural fast track unavailable under traditional APA standards,
- To sidestep standing defects by framing non-final threats as "final" disputes,
- And to manipulate the very executive agencies and departments it is simultaneously suing across two coordinated lawsuits (1:25-cv-10910-ADB and 1:25-cv-11048-ADB).

---

[1] *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–72 (1950) ("The operation of the Declaratory Judgment Act is procedural only. Congress enlarged the range of remedies available in the federal courts but did not extend their jurisdiction.").
[2] *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (requiring a "definite and concrete" dispute to satisfy Article III standing requirements for declaratory relief).
[3] *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282–83 (1995) ("District courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites.").

14. Harvard does not merely misunderstand the Declaratory Judgment Act.

15. It deliberately distorts a legislative tool intended to safeguard constitutional adjudication into a procedural bludgeon, weaponizing Congress's work against the very constitutional structure it was designed to protect.

### Judiciary Manipulation

16. Harvard's manipulation of the judiciary did not begin with the procedural misclassification in Case No. 1:25-cv-11048-ADB.

17. It began earlier, with the filing of Case No. 1:25-cv-10910-ADB (the AAUP lawsuit), where a private professors' union, represented by private counsel, alleged constitutional injury ostensibly suffered by itself, while simultaneously requesting relief that would only apply to Harvard University, a party not even named in the suit.

18. This initial disrespect for judicial structure - suing on behalf of unnamed third parties without proper standing, while misrepresenting the locus of alleged harm - set the foundation for the further procedural abuses that followed.

19. In 1:25-cv-11048-ADB, Harvard escalated the manipulation by misclassifying Nature of Suit Code 899, rigging judicial assignment to Judge Allison D. Burroughs through **Category II** misfiling under Local Rule 40.1.

20. By invoking 28 U.S.C. §§ 2201–2202 under false pretenses, Harvard sought not genuine declaratory relief, but a procedural weapon to achieve expedited rulings without meeting the substantive requirements of Article III standing.

21. Beyond procedural fraud, Harvard's attack on the judiciary extends to open defiance of constitutional adjudication itself.

22. Having lost at every level of the federal judiciary (including after a change of presidential administration and cabinet leadership), Harvard now mocks the legitimacy of the very judicial system it invokes, claiming constitutional injury while disregarding final judgments rendered through exhaustive constitutional review.

23. Its strategy turns the judiciary into a political theater rather than a forum for lawful adjudication, reducing constitutional loss to an administrative inconvenience to be procedurally circumvented.

## CONCLUSION

Harvard's litigation strategy is not a good-faith effort to protect constitutional rights, it is a procedural end-run designed to undo constitutional loss through jurisdictional fraud, declaratory gaming, and institutional misdirection. The misuse of the civil form sheet [ECF No. 1-11], the misapplication of jurisdictional statutes, and the coordinated abuse of the federal judiciary all reflect a deliberate attempt to exploit the courts, the executive branch, and Congress itself. This Court should reject Harvard's attempt to repackage institutional defiance as constitutional injury and decline to reward tactics that, if left unchecked, would erode the structural integrity of administrative review and transform declaratory relief into a political weapon.

Respectfully submitted,
*Amicus Curiae, pro se*

Robert A. Pietz
pietzreceipts@gmail.com
(754) 277-9578
Independence, MO 64056

Dated: April 25, 2025

8