Dan Stormer, Esq. [S.B. #101967]
Hanna Chandoo, Esq. [S.B. #306973]
Bina Ahmad, Esq. [SB. #329387]
HADSELL STORMER RENICK & DAI LLP
128 N. Fair Oaks Avenue
Pasadena, California 91103
Telephone: (626) 585-9600
Facsimile: (626) 577-7079
Emails: dstormer@hadsellstormer.com
        hchandoo@hadsellstormer.com
        bahmad@hadsellstormer.com

Rachel Weber [BBO# 674057]
Law Office of Rachel Weber
P.O. Box 1565
Northampton, MA   01061
Telephone: 413-325-5431
Email: rweber@rweberlaw.com

Attorneys for Amici Curiae
A JEWISH VOICE FOR PEACE

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PRESIDENT AND FELLOWS OF HARVARD COLLEGE,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al.,<br><br>Defendants. | Case No.: 1:25-cv-11048-ADB<br><br>[Assigned to the Honorable Judge Burroughs]<br><br>**BRIEF OF *AMICUS CURIAE* ON BEHALF OF A JEWISH VOICE FOR PEACE** |

## **INTRODUCTION**

**I.     Amicus JVP**

Amicus curiae A Jewish Voice for Peace, Inc. ("JVP") appears in this case to address two issues: (1) Defendants' position that criticism of Israel or Zionism is antisemitic, and (2) that Plaintiffs must remediate antizionism by adopting the International Holocaust Remembrance Alliance's ("IHRA") equivalence of antizionism and antisemitism. JVP is one of the largest progressive Jewish

BRIEF OF *AMICUS CURIAE*
A JEWISH VOICE FOR PEACE                           -1-

organizations in the world. JVP has worked for over 25 years to mobilize Jewish communities to advocate for a just society in Palestine and Israel rooted in human rights rather than oppression, "equality rather than supremacy, dignity rather than domination, democracy rather than dispossession. A society where every life is precious."[1] Made up of 720,000 members and supporters with chapters in nearly every state, JVP represents an important, sizeable and vocal minority Jewish viewpoint. Studies show a fifth to a third of American Jews share JVP's viewpoint,[2] and 45% of Jewish students believe Israel should not be a Jewish state or are undecided on the issue.[3] Accordingly, JVP has a unique perspective and specific experience that can assist the Court beyond what the parties can provide.[4] Amicus seeks to appear in support of Plaintiffs' Motion for Summary Judgment ("MSJ"), and writes to situate Plaintiffs' lawsuit in the broader context of the longstanding disagreements within the Jewish faith regarding Zionism and Israel.

## II.    Amicus's interest in this case

As antizionist Jews who criticize Israel's policies, JVP believes "that [their] voices are needed because the Zionist movement and the state of Israel purport to speak for and act on behalf of all Jews."[5] But "as Jews, [JVP] do[es] not believe that to be Jewish you must support Zionism."[6] JVP has grave concerns that the Court will accept Defendants' position that criticizing Israel and opposing Zionism are antisemitic. Doc. 59-1 Ex. A at 4-5, Ex. E at 3, Ex. F at 2, Ex. G at 2, Ex. H at 2, Ex. I at 2, Ex. K at 2, Ex. M at 2, Ex. N at 2 (also citing Executive Order 14188 Additional Measures to Combat Anti-Semitism, Jan. 29, 2025), Ex. P at 2-3. JVP is further concerned the Court will find that antizionism should properly be remediated by adopting the IHRA's newly manufactured definition of antisemitism to include antizionism or criticizing Israel. Doc. 59 ¶¶ 61, 62. Should this Court accept

---

[1] A Jewish Voice for Peace, *Our Vision*, available at https://tinyurl.com/cemw6eb9.
[2] Decl. of Stefanie Fox ¶ 3; Jewish Electorate Institute, *November 2023 National Survey of Jewish Voters*, Nov. 18, 2023, available at https://tinyurl.com/cue2bp3e; Jerusalem Center for Security and Foreign Affairs, *Survey Among American Jews: Over 51% Support for Biden's Decision to Withhold Arms Shipments to Israel*, May 31, 2024, available at https://tinyurl.com/2e4kdavk.
[3] Eitan Hersh & Dahlia Lyss, Report to the Jim Joseph Foundation, *A Year of Campus Conflict and Growth: An Over-Time Study of the Impact of the Israel-Hamas War on U.S. College Students*, Sept. 2024, available at https://tinyurl.com/mmxmjb8x.
[4] Decl. of Stefanie Fox.
[5] *Id.* at ¶ 4.
[6] *Id.* at ¶ 11.

BRIEF OF *AMICUS CURIAE*
A JEWISH VOICE FOR PEACE                -2-

Defendants' position that adopting the IHRA's redefinition effectively addresses antisemitism and that antisemitism includes antizionism, the Court would be redefining the Jewish faith. This ruling would force Jews to adopt a political ideology—Zionism—*as part of their religious beliefs*, and enshrine "do not criticize the nation-state of Israel" as a foundational religious belief in Judaism. In other words, this Court would be dictating who is and is not a Jew, what Jews are required to believe, and that criticism of a political ideology and nation-state is as heinous as hatred towards a religious group. Such a finding would render antizionist Jews as not being Jews at all and would dilute the protected classes that decades of precedent and lawmaking have defined.

Defendants have already forced the IHRA redefinition into many university policies. Plaintiffs made policy changes "to take account of the [] IHRA's definition of antisemitism in its antiharassment policies and disciplinary proceedings."[7] Doc. 59 ¶ 61. Conforming to the IHRA's redefinition, Plaintiffs made these changes because "for many Jewish people, Zionism is a part of their Jewish identity." *Id*. at ¶ 62, fns. 26, 27 (cite to "Harvard University Office for Community Conduct Frequently Asked Questions"). Adopting the IHRA makes "clear that the Non-Discrimination policy applies to conduct targeting Zionists." *Id*. at ¶ 62. In the past six months alone, Harvard has cancelled an antizionist Jewish Passover Seder,[8] suspended their Religion, Conflict, and Peace Program and demoted the directors,[9] let go of the heads of the Center for Middle East Studies,[10] suspended their research partnership with Birzeit University in the West Bank,[11] fired a librarian for taking down an Israeli hostage poster,[12] and cancelled a medical school panel featuring patients from Gaza.[13] But

---

[7] Dhruv T. Patel and Grace E. Yoon, *One Day After Trump Takes Office, Harvard Settles Two Antisemitism Lawsuits,* The Harvard Crimson, Jan. 21, 2025, available at https://tinyurl.com/5n8b6uty.
[8] Samuel A. Church and Cam N. Srivastava, *Adams House Withdraws Support for Anti-Zionist Passover Event, Citing Policy on Unrecognized Student Groups*, The Harvard Crimson, Apr. 14, 2024, available at https://tinyurl.com/4t9xzrbr.
[9] Sebastian B. Connolly and Julia A. Karabolli, *Harvard Divinity School Suspends Religion, Conflict, and Peace Initiative*, The Harvard Crimson, Apr. 2, 2025, available at https://tinyurl.com/2burph4v.
[10] Haley Cohen, *Harvard Cleans House at Middle Eastern Studies Department*, The Crimson, Mar. 30, 2025, available at https://tinyurl.com/2dfyhp7n.
[11] Dhruv T. Patel and Grace E. Yoon, *Harvard Suspends Research Partnership with Birzeit University in the West Bank*, The Harvard Crimson, Mar. 27, 2025, available at https://tinyurl.com/3bvjfx6n.
[12] Dion J. Pierre, *Harvard Fires Librarian for Tearing Down Israeli Hostage Poster*, The Algemenier, Mar. 12, 2025, available at https://tinyurl.com/4d2mrkk5.
[13] Rachel Fink, *Harvard Med School Cancels Panel Featuring Gazans Treated in U.S., Citing One-Sidedness*, Haaretz, Jan. 26, 2025, available at https://tinyurl.com/2r9khb76.

discriminating against one type of Jew in favor of another, here Zionist Jews over antizionist Jews, restricts Jews from practicing their religious beliefs by adopting a narrow view of what it means to be Jewish. It ignores facts and decades of history, and severely limits JVP members, supporters and anyone holding similar views from exercising their constitutional rights. JVP members are Harvard students and professors who oppose Israel's treatment of Palestinians in Gaza and who would be directly impacted should the Court adopt this reasoning in its potential ruling.

**ARGUMENT**

**III. The Original Purpose of the First Amendment and Establishment Clause Sought to Prevent This Very Type of Government Interference with Religion: Telling Jews How to Worship and Favoring One Type of Jew Over Another.**

Should this Court find that antizionism or criticizing Israel is antisemitic and that adopting the IHRA definition in one's policies remediates this, the Court would be redefining what it is to be a Jew. The Court would be ruling that any actions opposing Zionism or criticizing Israel, including by Jews in JVP, are antisemitic. *Id*. Such a ruling would mean that Zionism and supporting Israel are required parts of the Jewish faith. But this Court dictating what constitutes valid or required Jewish beliefs runs directly counter to the Establishment Clause of the First Amendment, its history, and its purpose.

The First Amendment was adopted to ensure "that neither the power nor the prestige of the Federal Government would be used to control, support or influence" the kinds of worship Americans practice. *Engel v. Vitale*, 370 U.S. 421, 430-431 (1962). It guards against "the pressures of government for change each time a new political administration is elected to office." *Id*.

In distinguishing between permissible and impermissible acts under the Establishment Clause, courts must be consistent "with history and faithfully reflec[t] the understanding of the Founding Fathers." *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 535-536 (2022) (citation omitted). The original purpose of the Establishment Clause "rested upon awareness of the historical fact that governmentally established religions and religious persecutions go hand in hand." *Id.* at 432. "[T]he First Amendment. . . . was written to quiet well-justified fears" when past governments had forced people to "speak only the religious thoughts that government wanted them to speak." *Id.* at 435. Its purpose was to "protect the integrity of individual conscience in religious matters" and "guard against

the civic divisiveness that follows when the government weighs in on one side of religious debate." *McCreary Cnty., Ky. v. ACLU of Ky.*, 545 U.S. 844, 876 (2005). James Madison, the primary author of the First Amendment, warned over 200 years ago: "Who does not see that the same authority which can establish Christianity, in exclusion of all other Religions, may establish with the same ease any particular sect of Christians, in exclusion of all other Sects?. . . . [and] may force him to conform." *Engel*, 370 U.S. at 436; Memorial and Remonstrance Against Religious Assessments, James Madison, 1875, available at https://tinyurl.com/msbnc9r.

Courts violate the Establishment Clause when they involve themselves in internal religious affairs, or discriminate against minority faiths. Courts must remain neutral. For instance, the Establishment Clause "bar[s] the government from interfering with the decision of a religious group" to reject or fire a fellow religious community member. *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*, 565 U.S. 171, 181 (2012). Courts also violate the Establishment Clause when they discriminate based on "an aversion or bias. . . against minority faiths." *Town of Greece v. Galloway*, 572 U.S. 565, 585-86 (2014). Adhering to the Establishment Clause therefore "demands religious neutrality—government may not exercise a preference for one religious faith over another." *Van Orden v. Perry*, 545 U.S. 677, 709 (2005). To remain neutral, the government should not favor "the religious practices and beliefs of some citizens" as it sends a message "to nonadherents that they are outsiders or less than full members of the political community." *Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290, 309-310 (2000), citing *Lynch v. Donnelly*, 465 U.S. 668, 688 (1984) (conc. Opn. Of O'Connor, J.). This is why the Establishment Clause was originally designed to prevent the government "from appearing to take a position on questions of religious belief." *County of Allegheny v. ACLU*, 492 U.S. 573, 594 (1989), citing *Lynch*, 465 U.S. at 687 (conc. Opn. Of O'Connor, J).

Should this Court accept Defendants' position that opposing Zionism or criticizing Israel are per se antisemitic, and that Plaintiffs adopting the IHRA in response ameliorates the issue, the Court would "interfere[e] with the decision of a religious group" and internal Jewish religious affairs. *Hosanna-Tabor Evangelical Lutheran Church*, 565 U.S. at 181. This Court would, in essence, declare that opposing Zionism or criticizing Israel is per se antisemitic and that Jews are required to believe in these political ideas. This would be a "blatant exercise [of] a preference for one religious faith over

another," *Van Orden*, 545 U.S. 677, based on "an aversion or bias. . . against [this] minority faith[]." *Town of Greece*, 572 U.S. at 585-86. Such an exercise would use the federal government's "power" and "prestige" "to control, support or influence" the kinds of worship and beliefs Jews hold. *Engel*, 370 U.S. at 430-431. The result would "exclu[de] [] all other [Jewish] Sects"—here, antizionist Jews who do not pledge loyalty to another nation state (Israel)—and essentially expel JVP and other antizionist Jews, a minority group, from Judaism. *Id*. Yet Defendants' position does not represent the views of all Jews and certainly not the views of JVP, and in fact runs directly counter to them.

Defendants' definition, and the Court accepting it, would label JVP Jews who oppose Zionism or criticize Israel as antisemitic. This position ignores Jewish students and faculty at Harvard who view the IHRA definition as "intellectually vacuous" that "muddles what speech is considered immoral."[14] It "punish[es] reasonable and valid criticism of Israel, including that which Jewish students initiate" as antisemitic.[15] It ignores Jewish Harvard faculty who oppose Harvard Hillel's[16] "longstanding hostility to dissent despite [the Jewish] community's persistent disagreements on Israel, Palestine, [and] Zionism."[17] By "framing [antizionist Jews'] critiques as antisemitic," Defendants' position "is a direct attack on [their] Jewish identity and heritage."[18] Defendants' position fails to take into account Israeli Professors who oppose the IHRA's definition of antisemitism as "conflat[ing] criticism of Israeli policies with antisemitism itself."[19] It ignores the former Hillel Director of 18 years when he states "it is not antisemitic to demand justice for all Palestinians living in their ancestral lands."[20] It even ignores opposition to adopting the IHRA as policy from Kenneth Stern, the lead

---

[14] Charlotte P. Ritz-Jack, *I Am a Jewish Student. Harvard's Settlement is Bad News*, The Harvard Crimson, Jan. 23, 2025, available at https://tinyurl.com/yu76peum.
[15] *Id*.
[16] Hillel is an organization active on college campuses to in part facilitate Jewish students' connections to Israel. *See* "What does Hillel Offer Students?" section of Hillel's website regarding the Birthright Israel trips, *https://www.hillel.org/hillel-faqs/*.
[17] Aaron D.A. Shakow, *I'm a Jewish Faculty Member at Harvard. Hillel Does Not Represent Me*, The Harvard Crimson, Oct. 23, 2024, available at https://tinyurl.com/2sbt2cfn.
[18] Shakow, *supra* note 9.
[19] Atalia Omer, *I'm an Israeli Professor. Why is My Work in Harvard's Antisemitism Report?*, The Guardian, May 9, 2025, available at https://tinyurl.com/w85zra9t.
[20] Bernie Steinberg, *For the Safety of Jews and Palestinians, Stop Weaponizing Antisemitism*, The Harvard Crimson, Dec. 29, 2023, available at https://tinyurl.com/ybxv4tsj.

drafter of the IHRA itself.[21] This "cynical weaponization of antisemitism by powerful forces" is intimidation that "ultimately silence[s] legitimate criticism of Israel and of American policy on Israel."[22] As this former Hillel director argues, similar to JVP, Jews must "be boldly critical of Israel—not despite being Jewish, but because [they] are."[23]

These Harvard student and faculty views represent the larger "shifting opinion on Israel/Palestine" among American Jews, including those of JVP.[24] A 2021 Jewish Electorate poll showed Jewish voters believed "intense criticism of Israel is generally not seen as antisemitic."[25] Thirty-one percent of Jewish voters felt Israel is committing genocide against Palestinians *in 2021*, long before October 7, 2023.[26] Jewish organization J Street's 2024 National Jewish Voters Survey found that 71% of Jewish voters do not "believe that criticism of how Israel is conducting the war in Gaza is antisemitic."[27] Defendants ignore that Judaism is a millennia old religion by claiming that this ancient religion requires complete and uncompromising loyalty to Israel,[28] a nation-state just 77 years old. Defendants cannot deny the existence of a significant number of Jews in JVP and throughout the world opposing Israel's policies who do not view their Jewish faith as requiring support for Israel or Zionism. In fact, many Jews believe the opposite: that their faith compels them to *oppose* Israel's policies and Zionism. Defendants' position and the IHRA redefinition impermissibly force this court to "take a position on [these] questions of religious belief" in violation of the Establishment Clause. *County of Allegheny*, 492 U.S. at 594.

This Court taking such a position would also violate the "integrity of individual conscience in religious matters" and enable "civic divisiveness" by "weigh[ing] in on one side of [this] religious

---

[21] United States Senate Judiciary Committee, Written Testimony of Kenneth S. Stern, Director, Bard Center for the Study of Hate, *A Threat to Justice Everywhere: Stemming the Tide of Hate Crimes in America*, Sept. 17, 2024, available at https://tinyurl.com/zawfmm2y.
[22] *Id*.
[23] *Id*.
[24] Caroline Morganti, *Recent Polls of US Jews Reflect Polarized Community: Trying to Keep Up with Shifting Opinion on Israel/Palestine, Surveys of American Jews are Beginning to Ask Questions*, Jewish Currents, June 29, 2023, available at https://tinyurl.com/4hcu5dn9.
[25] Jewish Electorate Institute: National Survey of Jewish Voters, July 2021, at 5, 36, available at https://tinyurl.com/yjrac6fw.
[26] *Id*.
[27] J Street, 2024 National Jewish Voters Survey, available at https://tinyurl.com/4ejfpbps.
[28] Decl. of Stefanie Fox ¶ 10.

debate." *McCreary Cnty., Ky.,* 545 U.S. at 876. The Court would be endorsing "the religious practices and beliefs of [Zionist Jews]" while sending a message to the "nonadherent[]" antizionist Jews who oppose Israel's policies "that they are outsiders or less than full members of the political community." *Santa Fe Indep. Sch. Dist.*, 530 U.S. at 309-310. This would "force [Jews like those in JVP] to conform" their beliefs to those of Zionist Jews' beliefs. *Engel*, 370 U.S. at 436; Memorial and Remonstrance Against Religious Assessments, James Madison, 1875. This type of government interference defining which are and are not valid religious beliefs is exactly what the Founding Fathers and drafters of the First Amendment and the Establishment Clause sought to prevent.

A court ruling accepting Defendants' position and finding the IHRA's redefinition of antisemitism properly addresses the issue would result in three religious-based constitutional violations: (1) it would define antisemitism as criticizing Israel's policies and acts in Gaza and the West Bank and opposing Zionism; as a result, it would (2) codify that supporting Israel and Zionism are tenets of Judaism, or requirements to be a Jew; and by finding as such, it would (3) label Jews who criticize Israel's policies and Zionism as *not* Jewish and, worse, as inherently antisemitic. If the Court were to base its ruling on such an argument, it would "make [antizionist Jews opposing the Israeli government's policies] speak only the religious thoughts that government wanted them to speak" to still be considered valid Jews. *Engel*, 370 U.S. at 435. All of these arguments are incompatible with the First Amendment and the Free Exercise Clause. Amicus is not asking this Court to find that Zionists Jews' beliefs are *not* Judaism, but rather asking the Court to refrain from "weigh[ing] in on one side of [this] religious debate" to define what is and is not Judaism. *McCreary Cnty., Ky.,* 545 U.S. at 876.

**IV.     In Addition to the Constitution, International Law Guarantees JVP's Religious Freedom**

JVP believes Judaism embraces the principles of humanity, justice, peace and equality. International law enshrines JVP's right to their religious beliefs free of government intrusion through several instruments, such as the International Covenant on Civil and Political Rights ("ICCPR") Articles 18 and 27, which guarantee religious freedom and the rights of religious minorities.[29] Indeed,

---

[29] ICCPR, U.N. General Assembly Treaty Series, vol. 999, Dec. 1966, Art. 27, 18, available at https://tinyurl.com/37hph8wp.

JVP's Jewish religious community helped build international law into what it is today. JVP's faith compels upholding international human rights, and JVP asks this Court not to interfere with or contravene international law.

Similar to the history and origins of the First Amendment and Establishment Clause, religious organizations played a key role in launching and sustaining the human rights movement including paving the way for the Universal Declaration of Human Rights ("UDHR"). So much so that "the U.N. Human Rights Office in 2017 launched an initiative called 'Faith for Rights'" encouraging religious leaders to build peaceful societies upholding human dignity and equality, and embrace diversity.[30] It is the Jewish community's suffering and persecution in the Nazi Holocaust that led to the enactment of the Genocide Convention in 1948.[31] Compelled by this history, many Jews including JVP believe it is their duty to uphold the very principles their community helped enact. The Genocide Convention prohibits targeting specific groups for their national, ethnic, racial or religious affiliation, deliberately inflicting living conditions to destroy this group, and forcibly transferring this group, as well as conspiring to commit and complicity in these acts.[32] The Genocide Convention built the foundation of numerous international human rights and humanitarian laws and principles celebrated today, such as the Fourth Geneva Conventions mandating occupying powers protect civilians and ensure their care and survival, the Convention on the Elimination of All Forms of Racial Discrimination ("ICERD"), and the Convention on the Suppression and Punishment of the Crime of Apartheid.[33]

---

[30] Press Release, "Universal Declaration of Human Rights at 70: 30 Articles on 30 Articles-Article 18," Office of the High Commissioner for Human Rights, Nov. 27, 2018, available at https://tinyurl.com/5bca6s3x.

[31] Convention on the Prevention and Punishment of the Crime of Genocide ("Genocide Convention"), General Assembly Resolution 260 A (III), Dec. 9, 1948, entry into force Jan. 12, 1951, available at https://tinyurl.com/swuvmz96.

[32] Genocide Convention, Art. 2, 3.

[33] The 1949 Geneva Convention Relative to the Protection of Civilian Persons in Time of War (Fourth Geneva Convention), Aug. 12 1949, 75 UNTS 287, Art. 14, 16, 18, 20, 23 (requiring occupying powers safeguard hospitals, access to hospitals and safety of sick and injured people), Art. 24, 50 (requiring occupying powers protect and ensure the safety of children), Art. 49 (prohibiting occupying powers from forcibly transferring and deporting protected persons from occupied territory), Art. 55 (mandating the occupying power ensure food and medicine to the occupied population), Art. 32, 33 (prohibiting torture and collective punishment by any nation state); 1966 International Convention on the Elimination of All Forms of Racial Discrimination, Treaty Series, 660, 195, (prohibiting racial discrimination, racial segregation and apartheid), available at https://tinyurl.com/fjzy2c59); The 1976 International Convention on the Suppression and Punishment of the Crime of Apartheid, U.N. Doc.

Building from "generations . . . before [them, JVP] fight[s] for the liberation of all people."[34] JVP's religious beliefs compel them to uphold the Genocide Convention's principles not only prohibiting genocide but also complicity in it. Based on their beliefs, JVP opposes Israel's policies in Gaza and the West Bank which violate international human rights and humanitarian law. JVP follows the Genocide Convention's mandate and upholds the rule of law, including the International Court of Justice's ("ICJ") January 26, 2024 ruling ordering Israel to abide by its obligations under the Genocide Convention.[35]

## CONCLUSION

JVP beseeches this Court to not declare that Jews opposing Zionism or the Israeli government's policies are antisemitic and thus discriminatory towards themselves and their own people. JVP are following their Jewish faith and the Genocide Convention's mandate by opposing Israel's policies in Gaza and the West Bank, and Zionism. JVP requests this Court grant Plaintiffs' motion and reject Defendants' attempt to redefine antisemitism as criticism of Israel or Zionism.

Dated: June 9, 2025

Respectfully Submitted,
Attorneys for Jewish Voice for Peace

HADSELL STORMER RENICK & DAI LLP

/s/ *Bina Ahmad*
Bina Ahmad*
Dan Stormer
Hanna Chandoo

**Pro Hac Vice Admission Pending*

Rachel Weber

---

A/9030, available at https://tinyurl.com/yc7kfj9x.
[34] Jewish Voice for Peace, *Our Vision*, available at https://tinyurl.com/cemw6eb9.
[35] ICJ Order of Jan. 26, 2024, Doc. No. 192-20240126-ORD-01-00-EN, Case 192-Application of the Convention on the Prevention and Punishment of the Crime of Genocide in the Gaza Strip (South Africa v. Israel), available at https://www.icj-cij.org/node/203447; ICJ Press Release on modification of the Order of Mar. 28 2024 – Application of the Convention on the Prevention and Punishment of the Crime of Genocide in the Gaza Strip (South Africa v. Israel).