## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

PRESIDENT AND FELLOWS OF
HARVARD COLLEGE,

*Plaintiff,*

*v.*

UNITED STATES DEPARTMENT OF
HEALTH AND HUMAN SERVICES,
*et al.,*

*Defendants.*

Case No. 1:25-cv-11048 (ADB)
**Leave To File Granted June 9, 2025**

---

## BRIEF OF *AMICUS CURIAE*
## FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
## IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

William Creeley
Colin McDonell
FOUNDATION FOR INDIVIDUAL RIGHTS
AND EXPRESSION
510 Walnut St., Ste. 900
Philadelphia, PA 19106
(215) 717-3473
will@thefire.org
colin.mcdonell@thefire.org
*Of counsel for* Amicus Curiae

Dustin F. Hecker (BBO No. 549171)
HECKER ADR LLC
43 Bradford Street
Needham, MA 02492
dustin.heckerADR@outlook.com
*Counsel of record*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...........................................................................................ii

STATEMENT OF INTEREST OF *AMICUS CURIAE* ................................................ 1

INTRODUCTION ....................................................................................................... 3

ARGUMENT ............................................................................................................... 5

CONCLUSION........................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*Ark. Writers' Project, Inc. v. Ragland,*
481 U.S. 221 (1987) .................................................................. 8

*Bd. of Regents of the Univ. of Wisc. Sys. v. Southworth,*
529 U.S. 217 (2000) .................................................................. 8

*Khalil v. Trump,*
No. 2:25-cv-01963 (D.N.J.) ....................................................... 1

*Moody v. NetChoice, LLC,*
603 U.S. 707 (2024) .................................................................. 8

*Nat'l Endowment for the Arts v. Finley,*
524 U.S. 569 (1998) .................................................................. 8

*Nat'l Rifle Ass'n of Am. v. Vullo,*
602 U.S. 175 (2024) .................................................................. 7

*Novoa v. Comm'r of Fla. State Bd. of Educ.,*
No. 22-13994 (11th Cir. argued June 14, 2024) ...................... 1

*Novoa v. Diaz,*
No. 4:22-cv-324 (N.D. Fla., Nov. 17, 2022) ............................. 1

*President and Fellows of Harvard College v. U.S. Dep't of Homeland Security,*
No. 1:25-cv-11472 (D. Mass. May 23, 2025) ............................ 5

*Regan v. Tax'n With Representation of Wash.,*
461 U.S. 540 (1983) .................................................................. 8

*Rosenberger v. Rector & Visitors of the Univ. of Va.,*
515 U.S. 819 (1995) .................................................................. 9

*Sweezy v. New Hampshire,*
354 U.S. 234 (1957) ................................................................ 10

*Texas A&M Queer Empowerment Council v. Mahomes,*
No. 25-992, 2025 WL 895836 (N.D. Tex. Mar. 24, 2025) ......... 1

*Trump v. Selzer,*
No. 4:24-cv-449 (S.D. Iowa filed Dec. 17, 2024) ..................... 1

*Univ. at Buffalo Young Ams. for Freedom v. Univ. at Buffalo Student Ass'n, Inc.*,
No. 25-140 (2d Cir. filed Mar. 11, 2025) ................................................................. 1

*Volokh v. James*,
No. 23-356 (2d Cir. argued Feb. 16, 2024) .......................................................... 1

**Rules**

34 C.F.R. § 100.6 ................................................................................................. 6

34 C.F.R. § 100.7 ................................................................................................. 6

34 C.F.R. § 100.8 ................................................................................................. 6

34 C.F.R. § 100.9 ................................................................................................. 6

**Other Authorities**

*'Blueprint' No More? Feds Back Away from New Campus Speech Restrictions*,
FIRE (Nov. 21, 2013) ........................................................................................ 9

*2025 College Free Speech Rankings expose threats to First Amendment rights
on campus*, FIRE (Sept. 5, 2024)........................................................................ 3

Adam Steinbaugh,
*FIRE, First Amendment Allies Ask OCR to Reject Calls to Ban Anonymous
Social Media Applications*, FIRE (Apr. 5, 2016) .................................................. 6

Benjamin Bell,
*Attorney Harvey Silverglate fights with FIRE*, Boston Herald (Feb. 1, 2009) ........ 2

Betsy Klein,
*Universities quietly negotiating with White House aide to try to avoid
Harvard's fate, source says*, CNN (May 31, 2025) ............................................... 10

Carole Hooven,
*Why I Left Harvard*, The Free Press (Jan. 16, 2024) ............................................ 3

Donald J. Trump,
Truth Social (May 2, 2025, 7:25 AM) .............................................................. 5

Elizabeth Joseph & Jason Hanna,
*The Harvard law professor representing Harvey Weinstein is being removed
as a faculty dean*, CNN (May 13, 2019) ............................................................. 2

*Federal government mandates unconstitutional speech codes at colleges and
universities nationwide*, FIRE (May 10, 2013) ...................................................... 6

*Harvard University: Due Process Ratings*, FIRE .......................................................... 2

*Harvard University: Speech Code Rating*, FIRE.......................................................... 2

Kenneth Roth,
   *I once ran Human Rights Watch. Harvard blocked my fellowship over
   Israel*, The Guardian (Jan. 10, 2023) .......................................................... 3

Letter from Kristi Noem, Sec'y of Homeland Security, to Maureen Martin,
   Harvard Univ. (May 22, 2025) .................................................................. 5

Letter from Thomas E. Wheeler, Acting General Counsel, U.S. Dep't of Educ.,
   et al., to Dr. Alan M. Garber, President, Harvard Univ., et al. (Apr. 11, 2025) ..... 4

Letter from William A. Burk, Quinn Emanuel, et al., to Thomas E. Wheeler,
   Acting General Counsel, U.S. Dep't of Educ., et al. (Apr. 14, 2025)...................... 4

Michael C. Bender,
   *All the Actions the Trump Administration Has Taken Against Harvard*,
   N.Y. Times, May 22, 2025 ....................................................................... 5

Michael S. Schmidt & Michael C. Bender,
   *Trump Officials Blame Mistake for Setting Off Confrontation With
   Harvard*, N.Y. Times, Apr. 18, 2025 .......................................................... 4

Press Release, U.S. Dep't of Educ., Joint Task Force to Combat Anti-
   Semitism Statement Regarding Harvard University (Apr. 14, 2025)...................... 4

Ryne Weiss,
   *FIRE to Congress: Harvard blacklist policy shut down women's
   organizations*, FIRE (Oct. 8, 2018)............................................................. 2

Sec'y Kristi Noem (@Sec_Noem), X (May 22, 2025, 2:01 PM)...................................... 5

*So to Speak podcast transcript: 20 years of FIRE with co-founder Harvey
   Silverglate*, FIRE ................................................................................ 2

Sophia Cai & Megan Messerly,
   *White House convenes meeting to brainstorm new Harvard measures*,
   Politico (May 30, 2025) .......................................................................... 5

Will Creeley,
   *In Unprecedented, Ill-Considered Move, Harvard Pressures Freshmen to
   Sign Civility Pledge*, FIRE (Sept. 1, 2011).................................................... 2

## STATEMENT OF INTEREST OF *AMICUS CURIAE*[1]

The Foundation for Individual Rights and Expression (FIRE) is a nonpartisan nonprofit that defends the rights of all Americans to free speech and free thought—the essential qualities of liberty. Since 1999, FIRE has successfully defended expressive rights on college campuses across the United States through public advocacy, targeted litigation, and *amicus curiae* filings.[2] While FIRE today defends First Amendment rights both on campus and in society at large,[3] FIRE continues to place special emphasis on defending the individual rights of students and faculty to freedom of expression, freedom of association, academic freedom, and due process of law. FIRE has a direct interest in this case because higher education plays a vital role in preserving free thought within a free society—and the judiciary's response to the federal government's unlawful coercion of Harvard University, one of our most prestigious institutions, will reverberate nationwide.

FIRE has an especially strong interest in this case given its longstanding role as a leading critic of Harvard's inconsistent and insufficient protection of free speech

---

[1] Counsel for *amicus curiae* certify that no counsel for a party authored this brief in whole or in part, and no person other than *amicus curiae* made a monetary contribution to the brief's preparation or submission. Neither the plaintiff nor defendants oppose the filing of this brief.

[2] *See, e.g.*, *Texas A&M Queer Empowerment Council v. Mahomes*, No. 25-992, 2025 WL 895836 (N.D. Tex. Mar. 24, 2025); *Novoa v. Diaz*, No. 4:22-cv-324, ECF No. 44 (N.D. Fla., Nov. 17, 2022), *pending appeal sub nom.*, *Novoa v. Comm'r of Fla. State Bd. of Educ.*, No. 22-13994 (11th Cir. argued June 14, 2024); Brief of *Amicus Curiae* FIRE, *Univ. at Buffalo Young Ams. for Freedom v. Univ. at Buffalo Student Ass'n, Inc.*, No. 25-140 (2d Cir. filed Mar. 11, 2025).

[3] In 2022, FIRE expanded its advocacy beyond the university setting. In lawsuits across the United States, FIRE works to vindicate First Amendment rights without regard to speakers' views. *See, e.g.*, Brief of *Amici Curiae*, *Khalil v. Trump*, No. 2:25-cv-01963 (D.N.J.); *Trump v. Selzer*, No. 4:24-cv-449 (S.D. Iowa filed Dec. 17, 2024); *Volokh v. James*, No. 23-356 (2d Cir. argued Feb. 16, 2024).

and academic freedom. Harvard's repeated failure to honor student and faculty rights spurred FIRE's founding; civil liberties attorney Harvey Silverglate, a Harvard Law School alumnus and lecturer, co-founded FIRE following decades spent defending students punished for their speech before the university's Administrative Board.[4] And in the twenty-six years since, FIRE has regularly challenged Harvard to fulfill its promises of freedom of expression and academic freedom. FIRE's criticism of Harvard is well-deserved. Among other missteps, Harvard has maintained illiberal speech codes[5] and unfair disciplinary procedures,[6] pressured students to sign a civility pledge,[7] blacklisted members of independent student organizations,[8] and punished faculty for defending unpopular clients[9] and making unpopular

---

[4] *See* Benjamin Bell, *Attorney Harvey Silverglate fights with FIRE*, Boston Herald (Feb. 1, 2009), https://www.bostonherald.com/2009/02/01/attorney-harvey-silverglate-fights-with-fire. The 1999 book Silverglate co-authored with University of Pennsylvania professor Alan Charles Kors, *The Shadow University: The Betrayal of Liberty on America's Campuses*, detailed failures by Harvard and other institutions to protect student and faculty rights. Silverglate and Kors founded FIRE in response to the outcry of requests for help they received following its publication. *So to Speak podcast transcript: 20 years of FIRE with co-founder Harvey Silverglate*, FIRE, https://www.thefire.org/research-learn/so-speak-podcast-transcript-20-years-fire-co-founder-harvey-silverglate.

[5] *Harvard University: Speech Code Rating*, FIRE, https://www.thefire.org/colleges/harvard-university.

[6] *Harvard University: Due Process Ratings*, FIRE, https://www.thefire.org/colleges/harvard-university/due-process.

[7] Will Creeley, *In Unprecedented, Ill-Considered Move, Harvard Pressures Freshmen to Sign Civility Pledge*, FIRE (Sept. 1, 2011), https://www.thefire.org/news/unprecedented-ill-considered-move-harvard-pressures-freshmen-sign-civility-pledge.

[8] Ryne Weiss, *FIRE to Congress: Harvard blacklist policy shut down women's organizations*, FIRE (Oct. 8, 2018), https://www.thefire.org/news/fire-congress-harvard-blacklist-policy-shut-down-womens-organizations.

[9] Elizabeth Joseph & Jason Hanna, *The Harvard law professor representing Harvey Weinstein is being removed as a faculty dean*, CNN (May 13, 2019), https://www.cnn.com/2019/05/11/us/harvard-law-professor-ronald-sullivan-loses-deanship-harvey-weinstein.

arguments.[10] Harvard has finished dead last in FIRE's annual campus free speech rankings for two years running.[11]

But exactly <u>none</u> of Harvard's problems—problems *amicus* FIRE knows well—in any way excuse Defendants' unlawful, unconstitutional demands. FIRE has a strong interest in this case because the hostile federal takeover Defendants seek to impose will leave free speech at Harvard—and institutions across the United States—a dead letter. Freedom of expression and academic freedom cannot survive lawless government coercion. Permitting the government to dictate Harvard's decision-making would violate the First Amendment, threaten the vitality and independence of institutions nationwide, and teach tomorrow's leaders the wrong lesson about life in a free society.

## INTRODUCTION

Wielding the threat of crippling financial consequences like a mobster gripping a baseball bat, the Trump administration seeks to coerce Harvard into abandoning its First Amendment rights and its autonomy as a private institution.

On April 11, citing concerns regarding anti-Semitism and ideological imbalance, the government sent Harvard a letter detailing sweeping demands that, if Harvard complied, would allow Harvard to "maintain [its] financial relationship

---

[10] *See, e.g.,* Carole Hooven, *Why I Left Harvard*, The Free Press (Jan. 16, 2024), https://www.thefp.com/p/carole-hooven-why-i-left-harvard; Kenneth Roth, *I once ran Human Rights Watch. Harvard blocked my fellowship over Israel*, The Guardian (Jan. 10, 2023), https://www.theguardian.com/commentisfree/2023/jan/10/kenneth-roth-human-rights-watch-harvard-israel.

[11] *2025 College Free Speech Rankings expose threats to First Amendment rights on campus*, FIRE (Sept. 5, 2024), https://www.thefire.org/news/2025-college-free-speech-rankings-expose-threats-first-amendment-rights-campus.

with the federal government."[12] Many of the demands sought to control what
Harvard's faculty and students think and say. They included (a) prohibiting the
admission of international students who are "hostile" to "American values" or
"supportive of terrorism or anti-Semitism"; (b) mandating viewpoint diversity among
students and faculty, and hiring faculty and admitting students on the basis of
viewpoint to reach that goal; (c) reforming departments and programs that "reflect
ideological capture" or "fuel antisemitic harassment"; (d) ending "all diversity, equity,
and inclusion (DEI) programs" and policies; and (e) ending recognition of pro-
Palestinian student groups and disciplining student members of those groups.

To its lasting credit, Harvard refused to submit. In an April 14 response,
Harvard made clear it would not "surrender its independence or relinquish its
constitutional rights."[13] That same day, the government announced a freeze on
billions of dollars in federal funding to Harvard.[14] So on April 21, Harvard filed this
First Amendment lawsuit.[15]

---

[12] Letter from Thomas E. Wheeler, Acting General Counsel, U.S. Dep't of Educ., et
al., to Dr. Alan M. Garber, President, Harvard Univ., et al. (Apr. 11, 2025),
*available at* https://www.harvard.edu/research-funding/wp-content/uploads/sites/
16/2025/04/Letter-Sent-to-Harvard-2025-04-11.pdf. The government sent this letter
by mistake. *See* Michael S. Schmidt & Michael C. Bender, *Trump Officials Blame
Mistake for Setting Off Confrontation With Harvard*, N.Y. Times, Apr. 18, 2025,
https://www.nytimes.com/2025/04/18/business/trump-harvard-letter-mistake.html.

[13] Letter from William A. Burk, Quinn Emanuel, et al., to Thomas E. Wheeler,
Acting General Counsel, U.S. Dep't of Educ., et al. (Apr. 14, 2025), *available at*
https://www.harvard.edu/research-funding/wp-content/uploads/sites/16/2025/04/
Harvard-Response-2025-04-14.pdf.

[14] Press Release, U.S. Dep't of Educ., Joint Task Force to Combat Anti-Semitism
Statement Regarding Harvard University (Apr. 14, 2025), https://www.ed.gov/
about/news/press-release/joint-task-force-combat-anti-semitism-statement-
regarding-harvard-university.

[15] Compl., ECF No. 1; *see also* Am. Compl. ECF. No. 59.

Far from relenting in its assault on Harvard's freedoms of speech and association and its institutional independence, the government has piled on the punishment. After Harvard filed this suit, the administration announced it would terminate additional research grants and disqualify Harvard from all federal funding moving forward.[16] On May 2, President Trump threatened to revoke Harvard's tax-exempt status.[17] And on May 22, the government prohibited Harvard from enrolling (or even maintaining current) international students "as a warning to all universities and academic institutions across the country,"[18] prompting Harvard to file another lawsuit.[19] And the campaign of retribution continues. The administration recently "convened officials from nearly a dozen agencies … to brainstorm additional punitive measures."[20] This flagrant abuse of power must end.

## ARGUMENT

The federal government's coercion of Harvard violates longstanding First Amendment principles and will destroy universities nationwide if left unchecked. It is long settled that the government cannot force private actors to punish protected

---

[16] Michael C. Bender, *All the Actions the Trump Administration Has Taken Against Harvard*, N.Y. Times, May 22, 2025, https://www.nytimes.com/2025/05/22/us/politics/harvard-university-trump.html.

[17] Donald J. Trump, Truth Social (May 2, 2025, 7:25 AM), https://truthsocial.com/@realDonaldTrump/posts/114437989795464761.

[18] Letter from Kristi Noem, Sec'y of Homeland Security, to Maureen Martin, Harvard Univ. (May 22, 2025), *available at* https://x.com/Sec_Noem/status/1925612991703052733; Sec'y Kristi Noem (@Sec_Noem), X (May 22, 2025, 2:01 PM), https://x.com/Sec_Noem/status/1925612991703052733.

[19] *See* Compl., *President and Fellows of Harvard College v. U.S. Dep't of Homeland Security*, No. 1:25-cv-11472 (D. Mass. May 23, 2025), ECF No. 1.

[20] Sophia Cai & Megan Messerly, *White House convenes meeting to brainstorm new Harvard measures*, Politico (May 30, 2025), https://www.politico.com/news/2025/05/30/white-house-convenes-meeting-to-brainstorm-new-harvard-measures-00376782.

expression. Nor may the government attempt to drive out disfavored ideas by dictating a university's decisions about speech, discipline, instruction, and admissions. And while the federal government need not fund institutions like Harvard, once it opts to do so, it cannot condition funding on censorship of those disfavored views. Ignoring these legal and constitutional safeguards seems not to trouble Defendants. But it should greatly concern this Court and all Americans who care about free speech, academic freedom, and our nation's future.

The federal government characterizes its demands of Harvard as necessary to address anti-Semitism on campus. But that worthy end cannot justify flatly unlawful and unconstitutional means. The same federal statute that governs institutional responses to allegations of anti-Semitism—Title VI—requires funding recipients like Harvard to receive notice, a hearing, and an opportunity to come into compliance voluntarily before the government can terminate funding. 34 C.F.R. § 100.6–100.9. These provisions reduce the risk of error and political bias and protect institutions against pressure from the federal government to censor students and faculty— pressure *amicus* FIRE has fought against for years.[21] They prohibit precisely the kind of repressive, capricious government overreach that now harms Plaintiffs. Yet despite the administration's professed interest in addressing campus anti-Semitism, it chose

---

[21] *See, e.g., Federal government mandates unconstitutional speech codes at colleges and universities nationwide*, FIRE (May 10, 2013), https://www.thefire.org/news/federal-government-mandates-unconstitutional-speech-codes-colleges-and-universities-nationwide; Adam Steinbaugh, *FIRE, First Amendment Allies Ask OCR to Reject Calls to Ban Anonymous Social Media Applications*, FIRE (Apr. 5, 2016), https://www.thefire.org/news/fire-first-amendment-allies-ask-ocr-reject-calls-ban-anonymous-social-media-applications.

to ignore the lawful statutory means by which it may do so. Instead, it instituted rule by fiat: arbitrarily declaring Harvard subject to punishment, cancelling hundreds of millions of dollars in grants and threatening worse to come, and forcing Harvard to file suit to ward off demands for unchecked federal authority over institutional decision-making.

The administration's railroading of Harvard ignores not only federal anti-discrimination law, but the First Amendment—in three specific ways.

First: The government cannot threaten consequences to pressure a private institution into censoring protected student and faculty speech and into refraining from its own protected expression. Just last year, the Supreme Court reaffirmed that the government cannot strongarm private actors into punishing speech that the First Amendment protects from state intrusion. *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 190 (2024). But jawboning—to such an extreme it might more accurately be called extortion—is exactly what the administration is doing to Harvard. The government is employing any means it can identify to bully Harvard into censoring disfavored or dissenting viewpoints. Not only would those actions be unconstitutional at a public university, they violate Harvard's free speech promises and its right as a private entity to set its own rules regarding speech. The government further demands that Harvard surrender control of academic decision-making and relinquish its right to make independent choices about discipline, hiring, and admissions—all of which violate longstanding precepts of academic freedom and institutional independence. *See, e.g., Bd. of Regents of the Univ. of Wisc. Sys. v. Southworth*, 529 U.S. 217, 239

(2000) (Souter, J., concurring) (noting long-recognized "autonomy that bars legislatures (and courts) from imposing conditions on the spectrum of subjects taught and viewpoints expressed" on campus).

Second: The government cannot intrude upon private institutions' right to make their own choices about speech. Again, just last year, the Supreme Court reemphasized the limits the Constitution places on the government in its interactions with private institutions. "On the spectrum of dangers to free expression," the Court wrote, "there are few greater than allowing the government to change the speech of private actors in order to achieve its own conception of speech nirvana." *Moody v. NetChoice, LLC*, 603 U.S. 707, 741–42 (2024). Defendants seek to do just that as they trample statutory and constitutional barriers to outlaw disfavored views on campus.

Third: The government cannot manipulate state funding to silence disfavored or dissenting viewpoints. The government may not be obligated to fund higher education in the first instance, but having chosen to do so, it must play by applicable constitutional rules. The Supreme Court long ago established that "even in the provision of subsidies, the Government may not 'ai[m] at the suppression of dangerous ideas[,]'" *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 587 (1998) (quoting *Regan v. Tax'n With Representation of Wash.*, 461 U.S. 540, 550 (1983)). If funding is "'manipulated' to have a 'coercive effect,'" the First Amendment demands judicial intervention. *Id.* (quoting with approval *Ark. Writers' Project, Inc. v. Ragland*, 481 U.S. 221, 237 (1987) (Scalia, J., dissenting)). Little could be more manipulative or coercive than revoking grants in an explicit attempt to override the expressive and

8

associational rights of a private institution of higher education, its students, and its faculty.

This case illustrates the grave threat to core First Amendment freedoms posed by expansive—and here, extralegal—conceptions of governmental power to address discrimination. Since 1999, *amicus* FIRE has advocated against overly broad and impossibly vague campus speech codes promulgated under federal anti-discrimination law. To that end, FIRE successfully led the charge against the Obama administration's attempt to pressure institutions to adopt a federal definition of "sexual harassment"—advanced as a national "blueprint"—that left protected speech subject to investigation and punishment.[22] And yet as misguided as that initiative was, it simply cannot be compared to the unprecedented scope and intensity of the unlawful shakedown Defendants mount here.

The government's aggression against Harvard is alarming not only because it is unlawful and unconstitutional, but because its plain aim is "suppression of free speech and creative inquiry in one of the vital centers for the Nation's intellectual life, its college and university campuses." *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 836 (1995). Left unchecked, the administration will continue to deploy its willfully distorted conception of federal anti-discrimination law as a pretextual battering ram against institutional autonomy and continue its attempts to seize for itself power to control speech and instruction on our nation's campuses.

---

[22] *'Blueprint' No More? Feds Back Away from New Campus Speech Restrictions*, FIRE (Nov. 21, 2013), https://www.thefire.org/news/blueprint-no-more-feds-back-away-new-campus-speech-restrictions.

While the administration's aggression against Harvard is exceptional, Harvard is far from the only institution targeted—and the bullying campaign is driving some colleges to pursue appeasement.[23] The stakes are high: "Teachers and students must always remain free to inquire, to study and to evaluate, to gain new maturity and understanding; otherwise our civilization will stagnate and die." *Sweezy v. New Hampshire*, 354 U.S. 234, 250 (1957). This Court must act now.

## CONCLUSION

The administration's actions are indefensible violations of the First Amendment's protection of freedom of expression, freedom of association, and academic freedom. For that and all the foregoing reasons, the Court should grant Plaintiffs' motion for summary judgment.

*Dustin F. Hecker*
DUSTIN F. HECKER
43 Bradford Street
Needham, MA 02492
dustin.heckerADR@outlook.com
*Counsel of record*

William Creeley
Colin McDonell
FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut St., Ste. 900
Philadelphia, PA 19106
(215) 717-3473
will@thefire.org
colin.mcdonell@thefire.org
*Of counsel for* Amicus Curiae *Foundation for Individual Rights and Expression*

---

[23] Betsy Klein, *Universities quietly negotiating with White House aide to try to avoid Harvard's fate, source says*, CNN (May 31, 2025), https://www.cnn.com/2025/05/31/politics/universities-negotiate-trump-administration-harvard.

## CERTIFICATE OF SERVICE

I certify that on June 9, 2025, I caused all registered counsel of record to be served through the Court's ECF system with a true and correct copy of this Brief.

_Dustin F. Hecker, Esq._
Dustin F. Hecker, Esq.