UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

Case No.: 1:25-cv-11048-ADB

| | |
|---|---|
| PRESIDENT AND FELLOW OF | ) |
| HARVARD COLLEGE | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| UNITED STATES DEPARTMENT | ) |
| OF JUSTICE, PAMELA BONDI | ). |
| Et All. | ) |
| Defendants. | ) |

**PETITION FOR LEAVE TO FILE BRIEF OF AMICI CURIAE IN SUPPORT OF
DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES...............................................................2

INTRODUCTION.........................................................................3

IDENTITY AND INTEREST OF AMICI CURIAE.................................... 7

ARGUMENT.............................................................................9

CONCLUSION..........................................................................11

## TABLE OF AUTHORITIES

Hannah Arendt, The Origins of Totalitarianism (Harvest Books, 1973)...........................9

Alexis de Tocqueville, Democracy in America (Penguin, 1951)....................................9

Salman Rushdie, Joseph Anton, A Memoir (Random House, 2012)...............................5

George Orwell, 1984 (Penguin, 1949)...................................................................9

John Tramphour, editor, How Harvard Rules (South End Press, 1989)...........................9

*About,* Harvard Kennedy School......................................................................9

Civil Rights Law, U.S. Department of Education.....................................................12

The New York Times v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d. 686 (1964)..........12

Gertz v. Robert Welch, Inc., 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d. 789 (1974)...............12

**INTRODUCTION**

As a former research scholar at Harvard University, the petitioner submits this Brief in support of the Defendants' opposition to Plaintiff's Motion for a summary judgment. In light of the Honorable Court's granting leave for brief of amici curiae by a group of Harvard alumni heaping praise on the university as a 'beacon on the hill' enshrined with the noble values of freedom and democracy, it is vitally important for the Court and the public to have access to the knowledge that unfortunately Harvard has become a paradoxical institution as a result of its tremendous power and influence, resulting in abuses of power and threats to American democracy. Indeed, Harvard violates civil rights laws and has a hidden history of intolerance of dissent, criminalization of dissent and outright unlawful repression with impunity, due in large part to its unhealthy influence in the American judicial system, which often treats Harvard as if above the law, giving it de facto legal immunity, i.e., a serious affront to U.S. Constitution. Thus, the Trump Administration's recent initiatives against Harvard should not be simply dismissed as an act of "authoritarianism," but rather as a timely, and much-needed, jolt to the darkly and repressive rampart of this esteemed institution of higher learning in North America. A healthy catharsis, the current dispute between Harvard and the Trump Administration, is beneficial for the sake of combatting what can be fairly labeled as Harvard absolutism, nurturing totalitarianism under its liberal veneer.

At the outset, Petitioner emphasizes that his criticism of Harvard should not be misconstrued as a tissue of diabolic anti-Harvard sentiment; Petitioner is a trained political scientist

4

and theologian, author of more than 35books, both scholarly and fiction/poetry, including a philosophical book on the Fifth US President, John Quincy Adams, a book on UN management reform, and a poetry book on the 9/11 tragedy. Petitioner is widely published at Harvard University, e.g., by Harvard University Press, Harvard Theological Review, and Harvard International Review, and many of his books are in circulation at various Harvard libraries.

Also, the Petitioner is a former scholar-turned whistleblower at Harvard, on the university's financial connections with a Muslim foundation opposed to the author, Salman Rushdie, subjected to a retaliatory false arrest and incarceration by Harvard University Police in order to silence his whistleblowing.[1] After enduring the horrific ordeal of pre-dawn arrest at his home in Newton, Massachusetts, followed by Harvard Police's trumpeting the Petitioner's arrest on multiple counts (of making death threats and extorting money from a Harvard professor and his secretary), in their high-profile news conference, the Petitioner was subsequently exonerated of any wrongdoing and all the (fictitious charges) against him were dropped at pre-trial without the imposition of any fine or probation. Instead of issuing an apology to the Petitioner for such gross mistreatment, the Harvard administration banned him from all Harvard property instead by issuing a no-trespass order, which is still in effect three decades later. Intoxicated with its power, Harvard then delegated the Petitioner's repression to the capable proxy hands of Cambridge Police – that repeatedly subjected the Petitioner to rights abuse, resulting in a civil action against Cambridge Police in this very court, Afrasiabi v. Cambridge Police, case no. 14-10239 ADB, which was settled out of court after it was slated for a jury trial; the defendants issued a formal apology to the Petitioner in that case as part of the settlement agreement, yet no similar apology by Harvard Police has ever been

---

[1] Mr. Rushdie in his autobiography, Joseph Anton, has recounted the Petitioner's effort on his behalf to lift the Iranian death sentence on him.

forthcoming. Not only that, in 2010, the Petitioner was nearly killed in the back of a Cambridge Police patty wagon, similar to Mr. Mr. Freddie Gray in Baltimore, after being subjected to a false arrest based on the false claim that he had not paid a 1984 ticket, which turned out had been paid per the subsequent admission of a Newton judge.

The Petitioner has documented the egregious abuses of his civil, constitutional, and human rights by Harvard University in the book titled, Looking For Rights at Harvard (2016), which carries a blurb by a cultural icon of America, the late CBS' "60 Minutes" correspondent, Mr. Mike Wallace, who testified as the Petitioner's character witness in the civil rights action, Afrasiabi v. Harvard, U.S. District Court Case No. 12200-EFH. Petitioner prays the Court to examine the book, submitted herein as Exhibit No. 1. The book's appendix contains copes of trial transcript, a support letter of Mr. Mike Wallace, and Plaintiff's announcement in the New York Times regarding his complaint (to the Commission on Judicial Conduct) against Judge Hillar B. Zobel, a Harvard-graduate and active alumni, who dismissed the Petitioner's defamation case against Harvard on the day set for jury trial. Judge Zobel due to his extensive conflict of interest should have recused himself from the case, instead of placing his Harvard loyalty above the dictates of justice. The Petitioner was similarly robbed of justice in the federal case as (a) the Petitioner's attorney, Margaret Burnham, walked out on the eve of trial despite a signed contract and the court did not compel her to represent the Petitioner and or give time to procure another attorney – "it's now or never, the choice is yours," the judge stated on record. The same judge had previously closed the case after Harvard had consented to the court's proposed settlement, confirmed by several witnesses including Political Science Professor John Ambacher, yet a month later Harvard reneged and convinced the judge to re-open a closed case and proceed to trial, betting that no judge would take the side of a first generation immigrant pro se over the mighty Harvard. Unsurprisingly, the

judge excluded the finding of two handwriting experts who found that the handwriting of the Harvard detective on trial matched that of the purported extortionist (which they had maliciously attached to the Petitioner), thus denying the Petitioner a token of justice.

As a Harvard whistleblower who heeded his moral responsibility by publicly questioning Harvard's amoral ties to the opponents of condemned author, Salman Rushdie, the Petitioner has discovered to his dismay that there is a pervasive culture of apathy and indifference with respect to Harvard's abuses of its power, as a result of which the Petitioner's cry for justice to Harvard's Council on Academic Freedom have fell on deaf ears. This unhealthy state of affairs at Harvard must come to an end, the sooner, the better. The Petitioner's experience of three decades of struggle for justice at Harvard through various state and federal courts is instructive in terms of shedding light on 'the other Harvard,' behaving unlawfully and with sheer cruelty toward one of its critics. As my case vividly shows, whistleblowers at Harvard have no rights, and are subjected to vicious persecution in the hands of Harvard administration and its private army of campus cops and detectives, who are uniquely bestowed with special powers as special state police without the slightest public supervision.

## IDENTITY AND INTEREST OF AMICI CURIAE

The Petitioner Afrasiabi is a resident of Massachusetts since 1973. He is a graduate of Thayer Academy in Braintree, University of Massachusetts in Boston, B.A. in Political Science, Magna Cum Laude, and Boston University, Ph.D. in Political Science, 1988. Petitioner has also completed two years of graduate studies in comparative theology at Andover-Newton Theological School. Petitioner has taught at various universities, including Boston University, Northeastern University, Bentley

University, Framingham State University, University of Massachusetts in Boston and Lowell, and Chapman University. Petitioner has worked as a research scholar at Harvard, UC Berkeley, and State University of New York in Binghamton.  Petitioner has a long record in working at

the United Nations, e.g., as a consultant to the Program, Dialogue Among Civilizations, and is a frequent contributor to the UN quarterly, UN Chronicle.  Petitioner is also the founding director of an NGO, Global Interfaith Peace, which placed a full page announcement in Boston Globe in 2002 immediately prior to the invasion of Iraq, calling for a peaceful resolution of the conflict (App. 3). Petitioner has a long record in defense of human rights and has played a role in the release of several US hostage in Iran, as well as long cooperation with the family of FBI agent missing in Iran, Robert Levinson.  In 2005, Petitioner was a visiting professor at Tehran University and lost his job immediately after Jerusalem Post's report on his letter to the Iranian President calling for mandatory education on the Holocaust "as a moral imperative." (App. 4). Petitioner condemns the collective punishment of Palestinians by Israel and has strongly condemned, e.g. in an article in USA TODAY, the atrocities perpetrated by Hamas against innocent Israeli citizens (App. 5).  Petitioner has repeatedly lost his teaching positions as a direct result of Harvard's systematic blacklisting him in the academia.  In fact, on two occasions, in 2022 at University of Massachusetts in Boston and 2007 at Bentley College, the Petitioner was terminated in the middle of semester as a direct result of Harvard's sinister pressures. Another example, Petitioner's fellowship at Middle East Institute was abruptly terminated by the Institute's Vice-President, David Mack, who was a Harvard alumni.  Sadly, the list of Harvard's mistreatment of the Petitioner is too long to recount here in full. Petitioner has lodged formal complaints of human rights abuse by Harvard to UN Human Rights Council, American Political Science Association, Middle East Studies Association, Amnesty International, and Middle East Watch.  Instead of remedial action for mistreating him, the Petitioner has endured a long cycle of Harvardian repression, both directly and indirectly.

8

**ARGUMENT**

There is a glaring, and indisputable, discrepancy between the public image of Harvard, as the embodiment of cherished values of freedom, tolerance, non-discrimination, and democracy, and its mean, vicious, cruel, unlawful and inhuman mistreatment of the voices of dissent, particularly those who dare to blow the whistle on the university's unethical practices. The Petitioner's experience of horrific repression by Harvard is instructive on this paradox, stemming from the absolutist and totalitarian tendency that has grown uncontrollably at Harvard as a direct result of its growing power and influence, resembling a 'papacy.' Various thinkers, ranging from De Tocqueville to Orwell to Arendt and others,[2] have alerted us on the perils of democracy and how the scourge of intolerance and authoritarianism can flourish even under democratic guises.[3] This malady at Harvard needs to be exposed and confronted, instead of being buried by the chorus of Harvard devotion by its vast army of loyalists, who are seemingly blind to the university's dark side, complained of by the Petitioner to various human rights organizations as well as courts in the United States, hitherto in vain due to the "Harvard mystique," that is, the assumption that Harvard can do no wrong and all its actions are proper and legitimate. If only that were true, and beneath the charming façade the devil

---

[2] According to Alexis Tocqueville, "In America the majority raises formidable barriers around the liberty of opinion; within these barriers an author may write what he pleases, but woe to him if he goes beyond them."
[3] According to Arendt, ""The ideal subject of totalitarian rule is not the convinced Nazi or the dedicated Communist, but people for whom the distinction between fact and fiction, true and false, no longer exists." This applies, *mutatis mutandis,* to the Harvard loyalists in their brief to the court, which reflects their blind loyalty and ignorance of Harvard's absolutism complained of herein. For a discussion of how Harvard subverts the rule of law constantly with relative impunity, see John Tramphour, How Harvard Rules (South End Press, 1098).

of absolutism and cruel intolerance did not breathe.  The mission statement of Harvard Kennedy

School boasts of ensuring "people can live in societies that are more safe, free, just, and sustainably

prosperous." But, in the Petitioner's case, the University has done the exact opposite, that is, it has

made sure that the Petitioner was deprived of his liberty and freedom of speech, that he could not

secure an employment as an educator, that he would repeatedly suffer in the proxy hands of

Cambridge Police to inflict further punishment, that he would live in dire poverty and his plea for

justice with the Harvard community falls on deaf ears. [4]

Indeed, what better example of Harvard's descent to the bosom of a repressive leviathan

blind to the dictates of justice than its history of mistreating this Petitioner, who has remained

steadfast on his quest for justice decades after decades, reminding one of Orwell's insight, "We are

not interested in the good of others; we are interested solely in power, pure power." Thankfully,

several luminaries, including the late Mike Wallace, filmmaker David Mamet, M.I.T. linguist Noam

Chomsky, historian Howard Zinn, and former Boston University President John Silber (App. 5,

recognized the heroic valor of this Petitioner standing up for the rights of a condemned author and

facing dire consequences from an institution that is supposedly a champion of freedom of speech

and individual rights and liberties.  The irony was fully captured by Mr. Wallace after his in-court

testimony on the Petitioner's behalf when he told the Boston Globe: "I admire Dr. Afrasiabi. He has

been wronged. The cannons of Harvard are lined up against a pee shooter. Afrasiabi is naïve enough

to believe that he can prevail over the resources of Harvard." (App. 6).  In retrospect, Wallace was

right and the Petitioner was but a victim of his naivete in the American justice, that he can somehow

enter the Kafkaesque 'castle' of American justice, i.e., a perpetual dream in vain.

---

[4] In 2016, former US Senator John Kerry wrote a letter to DOJ urging them to investigate Harvard over their alleged mistreatment of the Petitioner. The DOJ declined.  In his letter, Mr. Kerry, a former Cambridge prosecutor, stated that his office had determined that Afrasiabi's complaint against Harvard had "merits."

Hence, the historical significance of President Trump's initiatives against Harvard, an old institution that has been derailed by its own power and influence, to the detriment of American democratic values. As a professor of American politics for many years, the Petitioner urges the Court not to be persuaded by the University's blind followers and their cult of Harvard-worship, but rather by the historical necessity of addressing the hitherto-neglected issue of how Harvard's vast power has corrupted it and let it astray from its professed mission of propagating *veritas*.

Indeed, Petitioner would have never suffered the indignity of a wrongful arrest and incarceration in Harvard's hands if Harvard had not been given de facto legal immunity, thus allowing such perverse illegal acts against the Petitioner, whose only sin was to criticize Harvard over his research Center's unethical cohort with the fundamentalist opponents of Mr. Rushdie. In fact, belatedly, this Petitioner commenced a criminal proceeding against Harvard in Cambridge Court, and a magistrate found it meritorious of a show cause hearing. The Petitioner's unlawful repression by Harvard illuminates the depth of sedimented totalitarian tendency at Harvard and the imperative of confronting it for the sake of cherished democratic values and principles. Harvard should not be allowed to silence and to crush its dissidents with impunity, and the University's whistleblowers such as the Petitioner should be able to count on legal protection, irrespective of Harvard's disproportionate influence on the judiciary above-mentioned.


### CONCLUSION

As a political scientist and author, who became a whistleblower at Harvard and who has been subjected to a gross violation of his human, civil, and constitutional rights by Harvard and its cronies, the Petitioner opposes the Plaintiff's Motion for Summary Judgment. There is irrefutable evidence of Harvard's unlawful and unconstitutional behavior vis-à-vis the Petitioner and the Petitioner prays the

Court to permit this Brief, which counterbalances the one-sided and uncritical endorsement of Harvard, as a bastion of liberty, by a group of the Harvard supporters. The interest of justice dictates that all the truth about Harvard should be fully scrutinized, including the unsavory truths about the university's growing totalitarian tendency above-mentioned. Harvard will certainly be emboldened to continue and to recycle its unlawful and repressive behavior if it prevails in its Motion For Summary Judgment. Petitioner prays to proceed the case to trial and to consider witness testimony by the Petitioner on Harvard's systematic violation of his civil rights and the Civil Rights Laws, above all those protecting the freedom of speech.[5]

Date: June 10, 2025

Respectfully Submitted

Kaveh L. Afrasiabi, Ph.D., Pro Se

103 Indian Hill Road, Carlisle, MA 01741

(617) 3199276

Certificate of Service: A true Copy of this Petition has been served on the US Department of Justice, US Attorney General, Pam Bondi, on this date, June 10, 2025.

---

[5] The New York Times v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d. 686 (1964); Gertz v. Robert Welch, Inc., 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d. 789 (1974).